Filed 4/3/13  P. v. Neyra CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ABEL N. NEYRA,<br><br>    Defendant and Appellant. | 2d Crim. No. B236756<br>(Super. Ct. No. VA114509-01)<br>(Los Angeles County) |

A jury convicted Abel N. Neyra of two counts of committing lewd acts on a child (Pen. Code, § 288, subd. (a)) and one count of continuous sexual abuse (§ 288.5, subd. (a)).  He received a prison sentence of 16 years.  We affirm.

### FACTS

B.T. was born in 1992.  She lived with her mother in her grandmother's (I.) home.  Neyra is I.'s husband and also lived in th home.

Beginning when B.T. was six years old, Neyra would enter her room at night and kiss her on the mouth.  He would kiss her with an open mouth and use his tongue.  This continued frequently until B.T. was 11.

When B.T. was nine years old, Neyra began kissing and touching her breasts.  He would lift up her bed clothes and use his hand and mouth.

When B.T. was 10 years old, Neyra began putting his finger into her vagina. It happened frequently. On a few occasions, Neyra took B.T.'s hand and made her touch his penis. This happened until she was 11.

B.T. was afraid to report Neyra's actions. But when she was about eight or nine she told her friend, Y., and when B.T. was about 11 she told her friend B.

When B.T. was 11, Neyra kissed her on the neck while she was at her computer. B.T. told her mother (M.) that Neyra kissed her on the neck, but she did not mention any other incidents. M. told I. and Neyra about the kiss. From then on Neyra's inappropriate behavior stopped.

In 2010, M. was talking to a therapist when she mentioned the kissing incident. The therapist reported the matter to a social worker who contacted the sheriff's office.

Deputy Stephen Valenzuela interviewed B.T. B.T. told Valenzuela about the molestations. She was visibly upset during the interview. She cried when she told him that Neyra had touched her vagina.

Neyra had taken I. to the hospital for surgery. The police arrested him there. After he was taken to the police station, however, he was taken back to the hospital so that his heart could be checked.

Detective Anthony Olague interviewed Neyra at the hospital jail ward. Olague introduced himself as a Sheriff's detective. He recorded the interview. Initially, Neyra told Olague that he engaged in nonsexual kissing and that he was just playing. Later, he admitted he put his tongue in her mouth while kissing her. He also admitted he touched and kissed her breasts. He did it many times. Neyra denied, however, that he touched B.T.'s vagina or made her touch his penis

Olague suggested that Neyra write a letter to B.T. Neyra agreed to write a letter to ask B.T. to forgive him.

Neyra asked Olague about going to court and the charges against him. Neyra recognized that the charges are "the bad things I've done." Neyra also asked about

an attorney and whether he would have to pay for one. Olague told him he would not have to pay.

Neyra asked Olague if he could go home to see his wife, I. Olague told him I. was still in the hospital. Olague told him that he spoke with I.'s daughter, she told him I. had come out of the procedure, and was fine.

Detective Olague testified M. told him I. was in the hospital for surgery, but he did not know that it was for removal of an ovarian tumor. Olague also testified Neyra never complained that he was tired and had not slept for a long time.

*Defense*

Neyra testified on his own behalf. He was from Peru where he earned a "Ph.D." His thesis was on incest among Hispanics. In preparing his thesis, he interviewed several child molesters about their crimes.

M. spoke to him about kissing B.T. He said he was only playing a game.

He was arrested at the hospital after leaving his wife there for surgery. He was taken to the jail but returned to the hospital when he started having pain down his arm and heart palpitations.

The first time Neyra heard about B.T.'s accusations was when Olague interviewed him. During the interview, Neyra was hooked up to a machine, he was affected by a Luken shot he had been given, he had not slept or eaten for 36 hours, and his brain was not functioning well due to a problem with his cerebral arteries. Initially, he thought Olague was a doctor or Mr. Sanchez, a neighbor from Peru.

Before the recording started, Olague told him that if he cooperated everything would be all right. Because of his mental condition, Neyra could not remember much of what he told Olague.

Neyra admitted he kissed B.T. on the mouth once or twice. He did not stick his tongue in her mouth since she was nine. He said the kissing was a cultural practice, not sexual. He denied he touched her breasts under her clothes or that he touched her vagina. He made untrue statements during the interview because he believed if he cooperated he would be released to see I.

3

A number of family members who lived with B.T. in I.'s house testified they never saw Neyra enter her room at night or act inappropriately.

DISCUSSION

I.

Neyra contends the trial court erred in limiting direct examination of himself and I.

During Neyra's direct examination, the trial court ruled the reason for I.'s surgery was not relevant. Defense counsel asked the court in front of the jury, "Can it be in terms of cancer?" The court said, "No."

Nevertheless, defense counsel asked Neyra, "Do you know whether the tumor was benign or malignant?" The court sustained a relevancy objection.

Neyra argues the reason for the surgery was crucial to his defense. He claims the seriousness of I.'s condition was relevant to his state of mind during his confession. He testified he confessed because he believed if he cooperated he would be released to see her.

If the trial court's relevancy ruling was in error, it was harmless by any standard. Neyra subsequently testified that after his arrest he was taken to the hospital due to stress "because [he] left [his] wife alone in the hospital with cancer." He also testified that he had not been able to sleep because he "was imprisoned because of the arrest," his wife "had been diagnosed with cancer" and he "was detained in the hospital when [he] left her at the operating room" The jury was well aware that Neyra's wife's surgery was for cancer.

During I.'s direct examination, defense counsel asked, "Have you ever been around [Neyra] when he's having palpitations or heart attacks?" The trial court sustained the prosecutor's relevancy objection. The court stated, "You've asked the question about his whole medical history. You know, if you're getting at what his condition was exactly when the officers were questioning him, if she was there, that's one thing."

4

The trial court's ruling was correct. It is irrelevant whether Neyra has "ever" had palpitations or a heart attack. Only his condition at the time of his confession is relevant.

## II.

Neyra contends the trial court had a sua sponte duty to instruct on the lesser included offense of battery. Neyra concedes the contention only applies to counts 1 and 2, lewd act upon a child. (§ 288, subd. (a).)

There is a split of authority on the question whether battery is a lesser included offense to a violation of section 288. The question is now before our Supreme Court in *People v. Shockley* (2010) 190 Cal.App.4th 896, review granted March 16, 2011, S189462.

In *People v. Santos* (1990) 222 Cal.App.3d 723, the question was whether battery is a lesser related offense to a violation of section 288. In determining that it is the court without analysis stated in dicta that battery is not a lesser included offense to a violation of section 288. In *People v. Thomas* (2007) 146 Cal.App.4th 1278, the court rejected the People's argument that battery is not a lesser included offense. The People argued battery requires a touching, whereas a violation of section 288 can be accomplished without touching the victim, as where the victim is persuaded to touch himself. The court concluded, however, that where the victim is persuaded to touch himself, it is a "constructive touching" by the defendant. (*Thomas*, *supra*, at p. 1293.) Thus a battery as well as a violation of section 288 can be committed by such a constructive touching. The court declined to follow *Santos* as being not supported by authority. (*Ibid.*)

Here the People argue that battery requires a "harmful or offensive touching." (Citing *People v. Pinholster* (1992) 1 Cal.4th 865, 961.) The People claim, however, that a violation of section 288 can occur without the touching being harmful or offensive. They cite *People v. Martinez* (1995) 11 Cal.4th 434, 452, for the proposition that section 288 only requires that the touching be sexually motivated; it does not require that the touching "be considered a means of sexual gratification by members of the

5

mainstream population."  But even if the touching would not be considered a means of sexual gratification by the mainstream population, any sexually motivated touching of a child is harmful or offensive.  (See *People v. Thomas*, *supra*, 146 Cal.App.4th at p. 1292, fn. 8 ["The People do not dispute that any lewd act within the meaning of section 288 is necessarily harmful or offensive touching"].)  Section 288 "assumes that young victims suffer profound harm whenever they are perceived and used as objects of sexual desire.  [Citation.]"  (*People v. Martinez*, *supra*, at p. 444.)

The People argue that a battery must be nonconsensual, whereas consent is no defense to a violation of section 288.  The People cite no authority, however, for the proposition that a child can consent to a harmful or offensive touching.  (See *People v. Samuels* (1967) 250 Cal.App.2d 501, 513 [consent generally not a defense to battery; apparent consent of a child is ineffective].)

But it is not enough for Neyra simply to show that battery is a lesser included offense.  He must also show there is substantial evidence that he committed only the lesser offense and not the greater offense.  (*People v. Hughes* (2002) 27 Cal.4th 287, 366-367.)  Neyra points to no such evidence.

In any event, if it was error not to give a sua sponte instruction on battery as a lesser included offense the error was harmless.  Neyra confessed to putting his tongue in B.T.'s mouth while kissing her and to kissing her breasts.  There is no reasonable probability Neyra would have obtained a more favorable result had the instruction been given.  (See *People v. Breverman* (1998) 19 Cal.4th 142, 176.)

III.

Neyra contends the prosecutor committed misconduct.

In closing argument, defense counsel stated:

"[I]t takes a lot of guts to sit in that chair and be alleged to be a molester.  It takes a lot of guts to fight a charge like this.

In rebuttal, the prosecutor stated:

"When defense counsel talks about how this requires courage on the part of the defendant to go through this, it doesn't require any courage.  He has to

6

be here.  For [B.T.] to get on the witness stand and to tell a bunch of strangers what her step-grandfather did to her, violating her, to have to tell Deputy Valenzuela, who is a nice guy, as you could tell from the witness stand - - but still, an adult male that she has never met, wearing a uniform have to tell myself and Detective Olague, who she has never met before, what her step-grandfather did to her, violating her, that takes courage.

"Getting on the witness stand at the prior hearing and being cross-examined by a defense attorney whose job is to get the person who did these horrible things to her off . . . .

"[DEFENSE COUNSEL]:  Your Honor, misstates my roll.

"THE COURT:  All right.  I'll sustain the objections.

"Focus on the evidence.

"[PROSECUTOR]:  Whose job is to represent the defendant, who cross-examines her as to minute details as to what happened up to 12 years ago, that takes courage.

"The defendant sitting right there and spewing the garbage out of his mouth that he did earlier this morning does not take any courage.  It's, at best, ridiculous."

A prosecutor's misconduct violates the federal Constitution when it comprises a pattern of conduct so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process.  (*People v. Hill* (1998) 17 Cal.4th 800, 819.)  Conduct of a prosecutor that does not make the trial fundamentally unfair is prosecutorial misconduct under state law only if it involves the use of deceptive or reprehensible methods to attempt to persuade the court or jury.  (*Ibid.*)

Neyra argues the prosecutor committed misconduct by referring to facts not in evidence.  A prosecutor commits misconduct by referring to facts not in evidence. (*People v. Collins* (2010) 49 Cal.4th 175, 230.)  But the prosecutor enjoys wide latitude in commenting on the evidence, including reasonable inferences and deductions therefrom.  (*Ibid.*)

Here the prosecutor told the jury that it took no courage for Neyra to appear in court; he has to be there.  That comment was in direct reply to defense counsel's

7

statement that it took courage to fight a charge like child molestation. Neyra cannot complain that the prosecutor replied directly to his counsel's argument by truthfully pointing out Neyra had to be in court.

The prosecutor also told the jury that it took courage for B.T. to testify. B.T. testified about the intimate details of sexual assaults. To say that it takes courage is a fair comment on the evidence. It is also a statement of the obvious.

Neyra also complains that the prosecutor engaged in personal attacks on him and his counsel.

Neyra cites no case in which attacking the defendant was held to be misconduct. In any event, characterizing the defendant's testimony as "garbage" and "ridiculous" is within the bounds of acceptable advocacy.

Of more concern is the prosecutor's argument that it takes courage for B.T. to submit to cross-examination "by a defense attorney whose job is to get the person who did these horrible things to her off . . . ."

Prosecutorial misconduct includes personal attacks on the integrity of opposing counsel. (*People v. Gionis* (1995) 9 Cal.4th 1196, 1215.) Telling the jury that defense counsel's job is to get the defendant off is not misconduct unless the remark might be understood to suggest counsel was obligated or permitted to present a defense dishonestly. (*Id.* at p. 1217.) There was no such risk here. The prosecutor was simply arguing that B.T. was courageous in submitting herself to be cross-examined by defense counsel. The prosecutor quickly clarified his remarks by stating that it is defense counsel's job to cross-examine B.T.

## IV.

Neyra contends the trial court's order for AIDS testing constitutes an unauthorized sentence.

Section 1202.1, subdivision (d)(6)(A)(iii) requires the court to order AIDS testing of a person convicted of violating section 288 "if the court finds that there is probable cause to believe that blood, semen, or any other bodily fluid capable of transmitting HIV has been transferred from the defendant to the victim . . . ."

8

The court ordered the testing but made no such express finding. Neyra did not object.

Unless the sentence is "unauthorized" the failure to object waives any claim of defect on appeal. (*People v. Scott* (1994) 9 Cal.4th 331, 354.) A sentence is unauthorized where it could not be lawfully imposed "under any circumstances in the particular case." (*Ibid.*)

Because the testing requirement could have been imposed had the trial court made the required finding, the sentence is not unauthorized. Thus Neyra has waived the defect for failure to object.

The judgment is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P.J.


We concur:


YEGAN, J.


PERREN, J.

9

Clifford L. Klein, Judge

Superior Court County of Los Angeles

_____

Koryn & Koryn, Daniel G. Koryn, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, Robert C. Schneider, Deputy Attorney General, for Plaintiff and Respondent.